**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ESCON CAIMITE,

                                        Plaintiff,

              v.                                        No. 9:17-CV-0919
                                                        (GLS/CFH)
D. VENETTOZZI; A. RODRIGUEZ; E.F.
CORBETT; J.A. ESGROW,

                                        Defendants.

_____

**APPEARANCES:**                                **OF COUNSEL:**

Escon Caimite
01-A-2313
Greene Correctional Facility
P.O. Box 975
Coxsackie, New York 12051
Plaintiff pro se

Attorney General for the                        MATTHEW P. REED, ESQ.
    State of New York                           Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

        Plaintiff pro se Escon Caimite ("plaintiff"), an inmate who was, at all relevant times,

in the custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants D.

_____

        [1]  This matter was referred to the undersigned for report and recommendation pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Venettozzi, A. Rodriguez, E.F. Corbett, and J.A. Esgrow — who, at all relevant times, were employed by DOCCS or Great Meadows Correctional Facility ("Great Meadows") — violated his rights under the Eighth and Fourteenth Amendments, as well as Article I, § 5 of the New York State Constitution.  See Dkt. No. 1 ("Compl.").  Presently pending before the Court is defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  Dkt. No. 19.[2]  Plaintiff opposed defendants' motion. Dkt. No. 24.  For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.


## I. Background

The facts are reviewed in the light most favorable to plaintiff as the non-moving party.  See subsection II.A. infra.


### A. November 2015 Misbehavior Reports and Disciplinary Hearing

On November 13, 2015, non-party Corrections Officer ("C.O.") Doan issued plaintiff a misbehavior report charging him with assault on an inmate (100.10), violent conduct (104.11), fighting (100.13) and refusing a direct order (106.10).  Compl. ¶ 15; Dkt. No. 19-1 ("Def. Mem. of Law") at 3.  In the misbehavior report, C.O. Doan stated that he had observed plaintiff making a stabbing motion at inmate Nesmith, throw a weapon onto the

---

[2] Although plaintiff includes a document entitled "Notice of Motion" in his submission , the undersigned does not construe Dkt. No. 24 as a cross-motion, as plaintiff states that his "memorandum of law is submitted in support of his motion in response to defendants['] motion to dismiss," and he does not seek relief other than "an order dismissing defendants['] motion to dismiss."  See Dkt. No. 24 at 3, 4.  As such, the undersigned interprets Dkt. No. 24 as plaintiff's response to defendants' motion.

ground, and instigate a fist fight.  Id.  That same day, non-party C.O. Londrigan issued plaintiff a second misbehavior report charging him with possession of a weapon (113.10), contraband (113.23), and smuggling (114.10).  Compl. ¶¶ 16, 17; Def. Mem. of Law at 4. C.O. Londrigan alleged that after responding to the altercation in the recreation yard, he recovered a sharpened piece of wood with a masking-tape handle. Compl. ¶ 16; Def. Mem. of Law at 4.  C.O. Doan confirmed that he observed plaintiff throw the sharpened piece of wood onto the ground.  Id.  In the misbehavior report, C.O. Londrigan stated that he took possession of the alleged weapon, photographed it, and placed it in evidence.  Compl. ¶ 17; Def. Mem. of Law at 4.

On November 19, 2015, Hearing Officer ("H.O.") Corbett commenced a Tier III disciplinary hearing concerning plaintiff's two misbehavior reports.  Compl. ¶ 18; Def. Mem. at 4.  Plaintiff requested inmate Nesmith as a witness, but his hearing assistant informed him that inmate Nesmith refused to testify.  Compl. ¶ 19; Def. Mem. of Law at 4.  At the start of the hearing, plaintiff informed H.O. Corbett that he never received a witness refusal form, and that he was not told the reason inmate Nesmith refused to testify.  Id.  H.O. Corbett again informed plaintiff that inmate Nesmith refused to testify, but did not provide a reason as to why he refused.  Compl. ¶ 20; Def. Mem. of Law at 4.  He also failed to provide plaintiff with a witness refusal form.  Compl. ¶ 21; Def. Mem. of Law at 4.  Plaintiff repeatedly requested inmate Nesmith as a witness, and H.O. Corbett responded that he could not force inmate Nesmith to testify.  Compl. ¶ 22.

On December 18, 2015, H.O. Corbett found plaintiff guilty on all charges, and sentenced him to 545 days in solitary confinement.  Compl. ¶ 22; Def. Mem. of Law at 4.

Plaintiff appealed his sentence, and the sentence was modified to 220 days, with 50 days suspended.  Compl. ¶ 23; Def. Mem. at 4. Plaintiff's modified sentence was set to expire on July 24, 2016.  Compl. ¶ 24; Def. Mem. at 4.  Plaintiff filed an Article 78 proceeding in Albany County Supreme Court challenging his disciplinary sentence, and on January 10, 2017, the court reversed the decision and ordered a rehearing.  Compl. ¶ 25; Def. Mem. of Law at 4.  On January 20, 2017, DOCCS Director of Special Housing/Inmate Disciplinary Program Venettozzi administratively reversed and expunged the December 18, 2015 Tier III disciplinary sentence.  Compl. ¶ 26; Def. Mem. of Law at 4-5.  Plaintiff had already served his entire 220-day sentence in the Special Housing Unit ("SHU").[3]

### B. January 2016 Misbehavior Report and Disciplinary Hearing

On January 7, 2016, non-party C.O. Gebo issued plaintiff a misbehavior report charging him with possession of contraband (113.23), possession of marijuana (113.25), and smuggling (114.10).  Compl. ¶¶ 27, 30; Def. Mem. of Law at 5.  In the misbehavior report, C.O. Gebo alleged that an x-ray of plaintiff's rectum showed an unidentified foreign object, that was later revealed to be 0.8 grams of marijuana.  Compl. ¶¶ 28, 29; Def. Mem. of Law at 5. Soon after, plaintiff transferred to Southport Correctional Facility ("Southport").  Compl. ¶ 30; Def. Mem. of Law at 5.  On January 28, 2016, H.O. Esgrow commenced a Tier III disciplinary hearing concerning the January 7, 2016 incident at Great Meadows.

---

[3] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

Compl. ¶ 31; Def. Mem. of Law at 5.  At the hearing, plaintiff objected to the "unlawful strip frisk" that proceeded the finding of the unidentified foreign object, as he believed probable cause was never corroborated by reviewing the hospital log book, the SHU log book, or by Physicians Assistant ("P.A.") Nesmith.[4]  Compl. ¶ 32; Def. Mem. of Law at 5.  Plaintiff requested several witnesses be called at the hearing including P.A. Nesmith; all of the inmate hospital porters working the morning of the incident; and non-party J. Webster, the person who performed the drug test.  Compl. ¶ 33; Def. Mem. of Law at 5.  H.O. Esgrow denied plaintiff's request for witnesses; instead, he permitted the x-ray technician to testify.  Compl. ¶ 34; Def. Mem. of Law at 5.  Plaintiff asked H.O. Esgrow why the witnesses refused to testify, and he declined to reply, only stating, "you will get it in writing."  Compl. ¶ 34.  Plaintiff also requested a five minute phone call with the attorney handling his state court criminal appeals to seek assistance, but H.O. Esgrow denied that request and informed plaintiff that he did not have the authority to grant his request.  Id. ¶¶ 35, 36.  Before the conclusion of the hearing, H.O. Esgrow provided plaintiff with Form 2176, a witness refusal form.  Id. ¶ 37; Def. Mem. of Law at 5.

Form 2176, Witness Interview Notice, states that six witnesses were called at the February 25, 2016 disciplinary hearing.  Def. Mem. of Law at 5.[5]  The requested hospital

---

[4] P.A. Nesmith at Southport is not the same person as inmate Nesmith, who participated in the altercation at Great Meadows.  Def. Mem. of Law at 5 n.2.

[5] As defendants note, although plaintiff failed to include Form 2176 (or the witness refusal form) with his complaint, he references the document therein, and this Court acknowledged in its October 25, 2017 Decision and Order that plaintiff referenced various exhibits but failed to attach those exhibits.  See Def. Mem. of Law at 5 n.3; Dkt. No. 15 at 4 n.3.  "[A] court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading."  Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002).  Thus, the undersigned may rely on Form 2176 for the purposes of this motion.

porters, inmates within B-block,[6] and P.A. Nesmith were not called to testify.  Id. at 5-6.

Plaintiff did not identify the relevancy of the inmate hospital porters, what questions he

intended to ask, or the basis of their potential testimony.  Id. at 6. H.O. Esgrow denied the

B-block inmates because their testimony was duplicative of testimony already offered by

C.O. McCarthy, who testified consistently with plaintiff's recollection of the pat frisk.  Id.

H.O. Esgrow denied P.A. Nesmith after plaintiff stated that he intended to ask P.A. Nesmith

the same questions he had already asked the x-ray technician.  Id.  The x-ray technician

testified that the "plot" in plaintiff's hip could not produce the same image in an x-ray as the

found contraband.  Id.

On February 25, 2016, H.O. Esgrow found plaintiff guilty of all charges, and

sentenced him to 240 days in SHU.  Compl. ¶ 38; Def. Mem. of Law at 6.  Plaintiff

appealed his sentence, and the sentence was modified to 140 days with 40 days

suspended.  Compl. ¶ 39; Def. Mem. of Law at 6.  Plaintiff filed an Article 78 proceeding

challenging his disciplinary sentence, and, before the Third Department rendered their

decision, Acting Director A. Rodriguez reversed and expunged the February 25, 2016 Tier

III disciplinary sentence.  Compl. ¶¶ 40, 41; Def. Mem. of Law at 6.  Plaintiff claims he was

subjected to 380 days of solitary confinement with no access to educational programs,

work programs, telephones, commissary, and visitation.  Compl. ¶ 42. Defendants contend

that plaintiff was only confined for 360 days, the sum of his 220 days as modified from the

November 2015 sentence and 140 days as modified from the February 2016 sentence.

---

[6] The denial of the B-block inmate witness request is not alleged in the complaint as a constitutional violation.  See generally Compl.

Def. Mem. of Law at 5 n.4.

## II. Discussion[7]

## A. Legal Standard

Under Rule 12 (b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 326, 335 (2d Cir. 2009)) (internal quotation marks omitted). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts

---

[7] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

require enough facts to state a claim to relief that is plausible . . . .") (internal citations omitted).  Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a *pro se* litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest.  At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff, 537 F.3d at 191-92 ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.") (internal citations omitted).

### B. Fourteenth Amendment

Plaintiff contends that H.O. Corbett and H.O. Esgrow violated his due process rights by refusing to call his requested witnesses at the November 2015 and January 2016

disciplinary hearings.  Compl. ¶ 42.  Plaintiff also claims that Director Venettozzi and Acting Director Rodriguez violated his due process rights by upholding the November 2015 and February 2016 disciplinary sentences on administrative appeal "when there were clear violations of [plaintiff's] right to call witnesses . . . then administratively reverse said decisions only after [plaintiff] serv[ed] all of his SHU time[.]"  Id. ¶ 44.  Defendants argue that plaintiff's Fourteenth Amendment claims fail as a matter of law.  See Def. Mem. of Law at 8-13.

The Due Process Clause of the Fourteenth Amendment states: "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. CONST. amend. XIV § 1.  To state a prima facie due process claim, "a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citation and quotation marks omitted); see Mitchell v. Keane, 974 F. Supp. 332, 342 (S.D.N.Y. 1997) ("To state a procedural due process claim challenging a disciplinary action, a prisoner must allege *both* that he was deprived of a liberty interest cognizable under the Due Process Clause, and that he was deprived of that interest without the requisite [procedural due] process.") (emphasis added).

### 1. Liberty Interest

An inmate has a protected liberty interest in being free from segregated confinement but only where the alleged deprivation imposed amounts to an "atypical and significant hardship in relation to the ordinary incidents of prison life."  Sandin v. Connor, 515 U.S.

472, 483-84 (1995). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) (quoting Sandin, 515 U.S. at 484); see Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999) (quoting Sandin, 515 U.S. at 486) ("Although there is no bright-line rule regarding the length or type of sanction that would give rise to an 'atypical and significant hardship,' this standard will not be met unless the disciplinary and administrative sanctions are onerous."). Defendants assume that, for the purposes of this motion, plaintiff's 360-day confinement in SHU implicated a liberty interest. See Def. Mem. of Law at 8.

### 2. Procedural Due Process

Although inmates retain their constitutional right to due process protections, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the fully panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

> Certain due process protections therefore apply where disciplinary proceedings may lead to the loss of good time credit or would subject an inmate to solitary confinement in the SHU. Inmates are entitled to advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken.

<u>Luna v. Pico</u>, 356 F.3d 481, 487 (2d Cir. 2004) (citations omitted).

Plaintiff's due process claims center on his inability to call witnesses at the November 2015 disciplinary hearing presided over by H.O. Corbett at Great Meadow and the February 2016 disciplinary hearing presided over by H.O. Esgrow at Southport.  <u>See generally</u> Compl.  Although it is well-established that inmates are entitled to a reasonable opportunity to call witnesses, <u>see</u> <u>Luna</u>, 356 F.3d at 487, "this right is not unfettered . . . [and] may be limited for security reasons, to keep a hearing within reasonable limits, or on the basis of irrelevance of lack of necessity."  <u>Brooks v. Rock</u>, No. 9:11-CV-1171 (GLS/ATB), 2014 WL 1292232, at *28 (N.D.N.Y. Mar. 28, 2014) (citations omitted).  "While inmates are entitled to call witnesses at disciplinary hearings, hearing officers may deny witness testimony as irrelevant or redundant."  <u>Richard v. Fischer</u>, 38 F. Supp. 3d 340, 359 (W.D.N.Y. 2014) (citation omitted).

### a. November 2015 Disciplinary Hearing

As to the November 2015 disciplinary hearing at Great Meadows, plaintiff's due process claim centers on the fact that he was unable to call inmate Nesmith as a witness.  Compl. ¶ 19.  Plaintiff also seems to suggest that H.O. Corbett failed to provide him with the witness refusal form.  <u>Id.</u> ¶ 21; Dkt. No. 24 ("Pl. Opp.") at 10.  It has been held that "if a witness will not testify if called, it cannot be a 'necessity' to call him," and the prison official that "reasonably concludes that it would be futile to call a witness to testify" does not violate the inmate's constitutional rights.  <u>Silva v. Casey</u>, 992 F.2d 20, 22 (2d Cir. 1993); <u>see</u> <u>Abdur-Raheem v. Caffery</u>, No. 13-CV-6315 (JPO), 2015 WL 667528, at *6 (S.D.N.Y.

Feb. 17, 2015) (citing cases for the proposition that "courts [within this Circuit] have consistently held that a prison hearing officer's failure to call a fellow inmate who refuses to testify does not violate due process.").

Here, plaintiff admits in his pleadings that both his non-party hearing assistant and H.O. Corbett informed him that inmate Nesmith refused to testify.  Compl. ¶ 19.  When plaintiff continued to request inmate Nesmith as a witness, H.O. Corbett informed him that "he could not force an inmate to testify as a witness."  Id. ¶ 22.  To the extent that H.O. Corbett failed to inquire as to why inmate Nesmith refused to testify, "'[t]here is no indication in Second Circuit or Supreme Court case law that a hearing officer must make an independent evaluation of the basis for the refusal to testify.'"  Abdur-Raheem, 2015 WL 667528, at *6 (quoting Greene v. Coughlin, No. 93 Civ. 2805(DLC), 1995 WL 60020, at *14 (S.D.N.Y. Feb. 10, 1995) (holding that a Tier III hearing officer does not violate a prisoner's due process rights when he fails to investigate the reasons for an inmate refusing to testify)).

Moreover, although plaintiff indicates that H.O. Corbett failed to provide him with a witness refusal form and seems to suggest that such form must be provided to an inmate at his or her disciplinary hearing, see Compl. ¶ 21; Pl. Opp. at 10, the undersigned notes that a violation of DOCCS procedures or state procedural rules regarding disciplinary hearings do not, alone, demonstrate a federal due process claim under § 1983.  See Jackson v. Ramey, No. 9:07-CV-874 (NAM/ATB), 2010 WL 3761891, at *3 (N.D.N.Y. Sept. 2, 2010), report-recommendation and order adopted by 2010 WL 3761867 (N.D.N.Y. Sept. 20, 2010) (citing Martinez v. Minogue, No. 9:06-CV-546 (DNH/DEP), 2008 WL 4241746,

at *6 (N.D.N.Y. Sept. 11, 2008)).  In Martinez v. Minogue, this Court dismissed the plaintiff's Fourteenth Amendment claim where the "plaintiff's complaint allege[d] only a violation of state regulation related to the hearing officer's failure to . . . provide . . . a signed witness refusal form to the plaintiff [as] th[is] violation[ ] do[es] not rise to a level of constitutional significance."  Martinez, 2008 WL 4241746, at *6.  Similarly, here, plaintiff's claim that H.O. Corbett failed to provide him with a witness refusal form does not give rise to a federal due process claim.  See id.; Jackson, 2010 WL 3761891, at *3.  This is particular true where "there is no indication that [inmate Nesmith] would have testified at all, let alone provided testimony favorable to" plaintiff as he and plaintiff were the two inmates involved in the fight.  Rodriguez v. Ghoslaw, No. 98 CIV. 4658(GEL), 2001 WL 755398, at *10 (S.D.N.Y. July 5, 2001) (quoting Silva, 992 F.2d at 22) (concluding that "[b]ecause only these [two] men were involved in the episode, any testimony exonerating [the plaintiff] would almost certainly incriminate [the inmate witness].  It is therefore highly unlikely that [he] would provide any help to [the plaintiff].").

The undersigned notes that the only claim against Director Venettozzi is that he upheld C.O. Corbett's disciplinary determination on appeal "when there were clear violations of [plaintiff's] right to call witnesses," and then administratively reversed that determination after plaintiff had served his time.  Compl. ¶¶ 26, 44.  As the undersigned recommends dismissal of plaintiff's due process claim against H.O. Corbett because he fails to establish a constitutional violation, it is similarly recommended that plaintiff's due process claim against Director Venettozzi be dismissed.

Accordingly, it is recommended that defendants' motion to dismiss as to plaintiff's

due process claim concerning the November 2015 disciplinary hearing be granted.

### b. February 2016 Disciplinary Hearing

As to the February 2016 disciplinary hearing at Southport, plaintiff contends that his constitutional rights were violated when C.O. Esgrow prevented him from calling certain witnesses. See Compl. ¶ 33. Plaintiff contends that he requested several witnesses during his disciplinary hearing including P.A. Nesmith; all of the inmate hospital porters that worked on the morning of the incident; and non-party J. Webster, the individual who performed the testing on the foreign substance removed from plaintiff's rectum. Id. Plaintiff claims that H.O. Esgrow denied plaintiff's requests, but "allowed [the] x-ray technician Kakowski to testify." Id. ¶ 33. When plaintiff asked H.O. Esgrow why he had refused the witnesses, he did not reply; instead, he informed plaintiff that he would "get it in writing." Id. ¶ 34. Prior to the conclusion of the hearing, H.O. Esgrow provided plaintiff with witness refusal forms. Id. ¶ 37.

Defendants have proffered Form 2176 entitled Witness Interview Notice concerning plaintiff's February 2016 disciplinary hearing.[8] The Notice establishes that six witnesses were called at plaintiff's disciplinary hearing. Def. Mem. of Law at 20-21. It states that the six witnesses testified from Great Meadows via speaker phone, and noted that plaintiff had an opportunity to question them and hear their testimony. Id. at 20. As to plaintiff's request that the hospital porters be called as witnesses, Form 2176 states that plaintiff's request

---

[8] As stated above, the undersigned may reference this document as it is "integral to [and] explicitly referenced in" plaintiff's complaint. Matusovsky 186 F. Supp. 2d at 400; see subsection I.B supra, at 5 n.4.

was denied because plaintiff was "offered an opportunity to qualify these witnesses[,] however, in [his] offer of proof [he was] not able to pose any material specific questions." Id.  As to plaintiff's request that P.A. Nesmith testify, the Notice states that in plaintiff's "offer of proof, [he] indicated [he] wanted to ask 'how long did it take to produce the x-rays[?'] and [']would a plot in the hip produce the image shown in [the] x-ray[?']" Id. at 21. The Notice further states that plaintiff had asked these questions to the x-ray technician during his testimony, and the technician indicated that the x-ray took one minute to complete and that a plot in plaintiff's hip was not consistent with the image in the x-ray.  Id. The form does not reference the denial of J. Webster as a witness.  See id. at 20-21.

The Second Circuit has held that it is the prison official's burden to establish the rationality of declining an inmate's witness request.  See Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991).  To satisfy this burden, the prison official must provide "some explanation" during or after the hearing as to why he or she declined the witness.  See Russell v. Selsky, 35 F.3d 55, 58 (2d Cir. 1994).  "While prison officials need not put their reasons for refusing the inmate's request in writing or into the administrative record of the disciplinary hearing, due process does require that prison officials 'at some point' state their reasons for refusing the inmate's request."  Gonzalez v. Chalk, No. 13 Civ. 5486(PKC), 2014 WL 1316557, at *5 (S.D.N.Y. Apr. 1, 2014) (citing Ponte v. Real, 471 U.S. 491, 492 (1985)).

Here, Form 2176 demonstrates that H.O. Esgrow explained that he denied plaintiff's request for the hospital porters because plaintiff could not proffer specific, material questions to ask the witnesses or otherwise indicate the relevancy of their testimony.  Def.

Mem. of Law at 20.  As to P.A. Nesmith, Form 2176 demonstrates that H.O. Esgrow explained that the questions plaintiff planned to ask had already been answered by the x-ray technician, and, therefore, would be redundant.  Id. at 21.  As it is within the hearing officer's purview to deny a witness based on irrelevance or lack of necessity, see Kingsley, 937 F.2d at 30, and because the pleadings demonstrate that H.O. Esgrow offered "some explanation" as to why he denied the request, the undersigned finds that H.O. Esgrow has "adequately demonstrated the rationality of declining to call" P.A. Nesmith and the hospital porters.  Gonzalez, 2014 WL 1316557, at *5.  As such, it is recommended that defendants' motion on this ground be granted.

However, as to H.O. Esgrow's denial of J. Webster, there is no indication in the pleadings that H.O. Esgrow offered "some explanation" as to why he denied the witness, as is required under the Fourteenth Amendment.  See Gonzalez, 2014 WL 1316557, at *5; see LeBron v. Artus, No. 06-CV-0532(VEB), 2008 WL 111194, at *10 (W.D.N.Y. Jan. 9, 2008) ("When an inmate is precluded from obtaining certain witness testimony or other evidence, due process requires that the inmate be provided reasons for the denial either at the disciplinary hearing or at a later time") (citation omitted).  Although defendants argue that the testimony J. Webster would have provided regarding the "green leafy substance" found in plaintiff's rectum was ultimately presented to H.O. Esgrow in written reports, due process requires that the hearing officer inform plaintiff why he denied a witness.  See Russell, 35 F.3d at 58; Gonzalez, 2014 WL 1316557, at *5.  Thus, H.O. Esgrow's refusal to call  the individual who conducted the drug test on the foreign object found in plaintiff's rectum, "without any justification supported by institutional need, may well constitute a

violation of [plaintiff's] due process rights." Sowell v. Bullis, No. 9:13-CV-1482 (GLS/DJS), 2016 WL 1696454, at *12 (N.D.N.Y. Mar. 25, 2016).  Because of "the low standard required of a pro se plaintiff on a motion to dismiss," the undersigned finds that plaintiff has adequately alleged a due process claim with regard to H.O. Esgrow's failure to allow him to present J. Webster as a witness.  Brooks v. Prack, 77 F. Supp. 3d 301, 318 (W.D.N.Y. 2014).  As such, it is recommended that defendants' motion on this ground be denied.

The undersigned notes that the only claim against Acting Director Rodriguez is that he upheld C.O. Esgrow's disciplinary determination on appeal "when there were clear violations of [plaintiff's] right to call witnesses," and then administratively reversed that determination after plaintiff had served his time.  Compl. ¶¶ 40-41, 44.  "In general, the mere fact that a supervisory official affirmed the result of a disciplinary hearing will not suffice to establish that official's personal involvement in an alleged constitutional violation, which is a prerequisite to liability under § 1983."  Collins v. Ferguson, 804 F. Supp. 2d 134, 140 (W.D.N.Y. 2011).  Further, it is well-settled that a supervisor may be held liable if he or she "proactively participated in reviewing the administrative appeals as opposed to merely rubber-stamping the results."  Whitley v. Miller, 57 F. Supp. 3d 152, 161 (N.D.N.Y. 2014) (citation omitted).  At this stage in the litigation, it is unclear what involvement Acting Director Rodriguez had in the reversal and modification of plaintiff's disciplinary sentence. Thus, as the undersigned recommends that plaintiff's due process claim against H.O. Esgrow move forward, it is recommended that defendants' motion on this ground as to Acting Director Rodriguez be denied.

Finally, insofar as plaintiff claims that H.O. Esgrow's denial of his request to speak

17

with his attorney during his disciplinary hearing amounts to a constitutional violation, the Second Circuit has held that "there is no right to counsel . . . at prison disciplinary hearings." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citing Wolff, 418 U.S. at 567-70). Thus, to the extent that plaintiff bases his Fourteenth Amendment claim on his inability to confer with counsel during the February 2016 disciplinary hearing, his claim cannot stand.[9]

## C. Eighth Amendment

"The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994). As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). Objectively, the deprivation must be "sufficiently serious [such] that [the inmate] was denied the minimal civilized measure of life's necessities[.]" Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks and citation omitted). To satisfy the subjective prong of the test, the inmate must show that "the defendant official acted with a sufficiently culpable state of mind . . . such as deliberate indifference to inmate health or safety." Id. (internal quotation marks and citation omitted); see also Phelps v. Kapnolas, 308 F.3d 180, 185 (2d

---

[9] Defendants argue that "[p]laintiff implies that, because his disciplinary sentences were reversed and expunged after bringing Article 78 proceedings, the underlying hearings were constitutionally flawed." Def. Mem. of Law at 13. In his opposition papers, plaintiff contends that he "does not imply that just because the hearings were reversed [and] expunged that they were automatically unconstitutional." Pl. Opp. at 13. He then reiterates that he was "deprived of his constitutional due process right to call witnesses." Id.

Cir. 2002).

The objective prong of the test can be satisfied where the plaintiff pleads "conditions [that] either alone or in combination, pose an unreasonable risk of serious damage to [the plaintiff's] health[.]" Darnell v. Pineiro, 849 F.3d 17, 30 (2d Cir. 2017) (quoting Walker, 717 F.3d at 125). There is no "static test" to determine whether an alleged deprivation is sufficiently serious to satisfy the objective prong. Id. Rather, courts must determine whether the conditions violate "contemporary standards of decency." Id. (quoting Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995)) (additional citation omitted).

Here, plaintiff contends that he was confined in SHU for twenty-three hours a day with visitation restrictions and without access to educational and work programs, telephone, or commissary. Compl. ¶ 42. The undersigned finds that plaintiff's complaint fails to raise facts plausibly suggesting that defendants subjected him to conditions that were sufficiently serious for the purposes of the Eighth Amendment. Plaintiff has failed to allege any deprivations of a single, identifiable human need. See Tavares v. Amato, 954 F. Supp. 2d 79, 92 (N.D.N.Y. 2013) (concluding that plaintiff's claims that he was confined to his cell "for twenty-three hours a day, only allowed to shower during his one hour long recreation, prohibited from wandering around outside of his cell, and being forced to pick and choose which amenities he wanted to avail himself to given his limited amount of time outside of his cell, are insufficient to support an Eighth Amendment claim."); Greene v. Furman, 610 F. Supp. 2d 234, 237 (W.D.N.Y. 2009) (holding that inmate's Eighth Amendment claim originating from his confinement in segregation was insufficient to state a constitutional claim as the allegations of denied exercise, showers and haircuts, did not represent

atypical treatment, result in physical injury, or establish cruel and unusual punishment). The loss of privileges plaintiff alleges do not amount to a "serious deprivation of basic human needs." Roseboro v. Gillespie, 791 F. Supp. 2d 353, 381 (S.D.N.Y. 2011). Moreover, "[l]imitation on time out of cell, time to program, and on exercise . . ., as well as denial of access to niceties . . . , do not amount to constitutional violations, even when considered collectively." Burns v. Martuscello, No. 9:13-CV-0486 (LEK/CFH), 2015 WL 541293, at *12 (N.D.N.Y. Feb. 10, 2015) (citation omitted).

In his response, plaintiff cites Peoples v. Fischer for the proposition that "[n]umerous courts have found that long stretches of segregation can constitute cruel and unusual punishment." Pl. Opp. at 14 (quoting Peoples v. Fischer, 898 F. Supp. 2d 618, 625 (S.D.N.Y. 2012) (internal quotation marks omitted)). However, in demonstrating that the plaintiff had sufficiently stated an Eighth Amendment claim, the Southern District cited to cases where the plaintiff had been confined for upwards of twenty-seven years. See Peoples, 898 F. Supp. 2d at 625 n.52 (citing inter alia Silverstein v. Bureau of Prisons, 704 F. Supp. 2d 1077 (D. Colo. 2010)). Plaintiff's 360-day confinement falls below the threshold used in Peoples.

As plaintiff has failed to adequately plead an Eighth Amendment conditions of confinement claim, it is recommended that defendants' motion on this ground be granted.

## D. State Law Claims

Plaintiff contends that defendants violated his right to be free from cruel and unusual punishment under Article I, § 5 of the New York State Constitution. See Compl. ¶ 47.

20

The undersigned recommends dismissal of plaintiff's state law claim concerning cruel and unusual punishment in light of the recommendation of dismissal of the federal Eighth Amendment claim pertaining to the same set of facts.  See 28 U.S.C. § 1367(c)(3) (stating that the district court may decline to exercise supplemental jurisdiction over a claim if all other claims over which the court has original jurisdiction have been dismissed); City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172 (1997); Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994).

Even if the underlying federal cause of action survived, plaintiff's state law claim is still subject to New York Correction Law § 24.  Pursuant to Correction Law § 24(1):

> No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

N.Y. CORR. LAW § 24(1).  Courts look at the following factors to determine whether a defendant's action is within the scope of employment:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in the actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could have reasonably anticipated.

Ierardi v. Sisco, 119 F.3d 183, 187 (2d Cir. 1997) (quotations and citations omitted) (holding that the defendant's alleged sexual harassment was not undertaken in the discharge of his duties and beyond the protection afforded to officers under § 24).

The test to determine whether the defendants' actions fall within the scope of their employment is "whether the act was done while the servant was doing his master's work no matter how irregularly, or with what disregard of the instructions." Cruz v. New York, 24 F. Supp. 3d 299, 309 (W.D.N.Y. 2014) (citing Cepeda v. Coughlin, 128 A.D.2d 995, 996 (N.Y. App. Div. 1987)).  Conduct that is "purely for personal reasons unrelated to the employer's interests, . . . which is a substantial departure from the normal methods of performing the officer's duties is not considered within the scope of employment." Johnson v. New York State Dep't of Corr. Servs. & Cmty. Supervision, No. 11-CV-079S, 2013 WL 5347468, at *2 (W.D.N.Y. Sept. 23, 2013) (quoting Gore v. Kuhlman, 217 A.D.2d 890, 891 (N.Y. App. Div. 1995)).

Plaintiff's complaint demonstrates that defendants were on duty in the correctional facility at the time of the alleged constitutional violations, and that their alleged acts were not significant departures beyond the scope of their employment.  Accordingly, the undersigned recommends dismissal of plaintiff's state law claims.


### III. Conclusion

**WHEREFORE**, for the reasons herein, it is hereby

**RECOMMENDED**, that defendants' Motion to Dismiss (Dkt. No. 19) be **GRANTED IN PART**:

(1) Insofar as it seeks dismissal of plaintiff's Fourteenth Amendment due process claim against H.O. Corbett and Director Venettozzi;

(2) Insofar as it seeks dismissal of plaintiff's Eighth Amendment conditions of

confinement claim against H.O. Corbett, H.O. Esgrow, Director Venettozzi, and Acting Director Rodriguez;

(3) Insofar as it seeks dismissal of plaintiff's state law claims, the motion be **GRANTED**, and H.O. Corbett and Director Venettozzi be dismissed from the action; and it is further

**RECOMMENDED**, that defendants' Motion to Dismiss (Dkt. No. 19) be **DENIED IN PART**:

(1) Insofar as it seeks dismissal of plaintiff's Fourteenth Amendment due process claim against H.O. Esgrow and Acting Director Rodriguez, the motion be **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[10]

---

[10] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).

Dated: October 29, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge